# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

OLTON LEE DUMAS,

    Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, AMANDA TUFANO, JESSICA RANEY, KENOSHA BEEF INTERNATIONAL, NATOLIE MURRAY d/b/a BIRCHWOOD FOODS, CHAPIN & ASSOCIATES, RICHARD C. DAVIS, and J. JAY GOODMAN,

    Defendants.

Case No. 19-CV-1702-JPS

**ORDER**

    Plaintiff Olton Dumas, proceeding *pro se*, filed a complaint in this matter and a motion for leave to proceed *in forma pauperis*. (Docket #1, #2). In order to allow a plaintiff to proceed without paying the $400 filing fee, the Court must first decide whether the plaintiff has the ability to pay the filing fee and, if not, whether the lawsuit states a claim for relief. 28 U.S.C. §§ 1915(a), (e)(2)(B). Then, the Court must dismiss the action if it is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B).

1.  **MOTION TO PROCEED IN FORMA PAUPERIS**

    On the question of indigence, although Plaintiff need not show that he is totally destitute, *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980), it must be remembered that the privilege of proceeding *in forma pauperis* "is reserved to the many truly impoverished litigants who, within the District

Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

Plaintiff avers that he is employed, and his take-home pay is $431.94 weekly. (Docket #2 at 1). Plaintiff received a one-time $10,000.00 worker's compensation settlement, which is the subject of the litigation. *Id.* He has $1,200.00 in savings, and no other assets. *Id.* at 2. He financially supports his fiancé(e) and stepson, and his total monthly expenses are just under $1,800.00. He explains that he is seeking housing, as he could not afford a $700.00 per month rent. He also has approximately $20,000.00 in consumer debt. On these averments, the Court finds that Plaintiff is indigent. He will be granted leave to proceed *in forma pauperis* and will not be required to prepay the filing fee in this action.

## 2. COMPLAINT SCREENING

Notwithstanding the payment of any filing fee, however, when a plaintiff requests leave to proceed *in forma pauperis*, the Court must screen the complaint and dismiss it or any portion thereof if it has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that he is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not

necessary to plead specific facts; rather, the plaintiff's statement need only "give the defendant fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

Additionally, allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all averments of fraud with particularity. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). In other words, the complaint must describe the "who, what, when, where, and how" of the alleged fraud. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

### 3. RELEVANT ALLEGATIONS

The complaint arises from a worker's compensation dispute involving Plaintiff's employer, Kenosha Beef International Limited ("Kenosha Beef") and the employer's insurance company, Travelers Property Casualty Company of America ("Travelers"). The complaint also names Amanda Tufano (an agent of Travelers), Jessica Raney (another agent of Travelers), Natolie Murray, Chain & Associates (a law firm), and

Richard C. Davis (a lawyer at Chain & Associates) in the complaint, although none of these defendants appear to have been materially involved with the alleged conduct.

On June 19, 2018, Plaintiff was working the night shift at Kenosha Beef, which runs from 11:00 p.m. to 7:30 a.m. One of his tasks was to move four machines away from a conveyer belt in order to clean behind the conveyor. At some point in the night, while moving the machinery, Plaintiff pulled a muscle in his left groin. Plaintiff estimates that the injury occurred around 3:00 a.m. Plaintiff reported the injury on to his supervisor towards the end of his shift, on the morning of June 20, 2020.

Plaintiff was ultimately diagnosed with a reduceable left inguinal hernia, for which surgery was recommended. He underwent surgery on July 17, 2018, and returned to work on August 14, 2018. On July 21, 2018, while recovering from the surgery, Plaintiff received a letter from Travelers, informing him that Travelers and Kenosha Beef had paid for his medical care in full. However, his peace of mind was short-lived.

On July 23, 2018, Plaintiff reached out to Travelers to inquire about receiving lost wages for July 16, 2018 to July 23, 2018—the period of time during which he underwent and recovered from surgery. This is where the situation began to unravel. On July 24, 2018, Plaintiff received a phone call from "an Unknown Agent of Defendant(s), who informed him that a 'video' was reviewed of the area where he had sustained the work-related injury, and it [was] determined that the injury did not occur at work." (Docket #1 at 9). Shortly thereafter, Plaintiff received a letter from Travelers, which confirmed that his workers' compensation claim would be denied, and instructed him to submit his medical bills to his group health insurer. The basis of the denial was that Plaintiff's injury did not seem to arise from his work—i.e., it predated July 20, 2018—and that the type of lifting that

Plaintiff did would not typically produce a left or bilateral inguinal hernia. *See* (Docket #1-1 at 13). This latter point was, ostensibly, confirmed by the above-referenced video footage of Plaintiff lifting machinery as part of his job.

After a months-long battle to obtain a copy of the video footage, Plaintiff finally prevailed. However, when Plaintiff finally watched the video, he noticed that it displayed two distinct times where Plaintiff was moving machinery alone. The first clip was at 11:42 p.m. on June 19, 2018; the second was at 12:09 a.m. on June 20, 2018 (i.e., approximately a half-hour later). Plaintiff seems to suggest that because the footage demonstrates him moving machinery alone, without assistance, that he could have been injured during either of these times.

In the course of investigating Plaintiff's claim, Kenosha Beef and Travelers employed Dr. J. Jay Goodman to conduct a medical review of Plaintiff's records. Dr. Goodman did not watch the video, but was told by either Travelers or Kenosha Beef that it demonstrated that Plaintiff's injury did not occur at work. Dr. Goodman also determined, based on "information provided" to him, that Plaintiff only moved two pieces of machinery, which were only approximately 50–70 pounds, and which were both on wheels. Dr. Goodman also noted that Plaintiff assisted in moving a 200-pound piece of machinery as well, but that this machine was also on wheels and "[t]here people moved this machine in a short distance without any issues." (Docket #1 at 14). It is unclear how Dr. Goodman knew this to be true—i.e., it is unclear whether this also appeared in the video footage and was reported to him—but in any case, it assisted him in his determination that the injury was not work-related.

Thirteen months later, after a protracted dispute, Plaintiff's worker's compensation claim was ultimately settled for $10,000.00—an amount far

lower than the alleged value. Plaintiff felt pressured to settle the claim because he was suffering physiologically and financially from the turmoil. He was concerned that this amount would be nowhere near enough to cover his medical bills.

On July 19, 2019—almost a year to the date of his first injury—Plaintiff suffered another work-related injury. Plaintiff does not allege the nature of the injury or how it occurred. After some initial obstacles, Plaintiff began receiving benefits. He was put on "Light Duty Restrictions" at work, but these restrictions proved too arduous for him to safely perform. Plaintiff was ultimately reassigned to another department, which resulted in lower wages and less work. He was displeased with this outcome, and believed it was retaliatory. He sought recourse with the union representative, which proved fruitless—the union representative had been told by Kenosha Beef that Plaintiff's continued complaints about his Light Duty Restricted work would result in termination.

Based on these facts, Plaintiff alleges that Kenosha Beef and Travelers formed a RICO enterprise to delay and deny Plaintiff's worker's compensation claims. Plaintiff alleges that these defendants purposefully engaged in dilatory tactics to "circumvent their statutory requirement to pay the worker's compensation benefits stated under their contract." (Docket #1 at 7). Plaintiff alleges that Kenosha Beef made fraudulent misrepresentations about the nature of Plaintiff's work injury to Dr. Goodman and Travelers via the U.S. mail or electronic communications, in violation of 18 U.S.C. §§ 1341, 1343, as well as Wisconsin state law.

4. **ANALYSIS**

Congress enacted RICO "in an effort to combat organized, long-term criminal activity." *Jennings v. Auto Meter Prod., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). RICO makes it a crime to invest income derived from a pattern

of racketeering activity in an enterprise "which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(a); to acquire or maintain an interest in an enterprise through a pattern of racketeering activity, § 1962(b); to conduct an enterprise's affairs through a pattern of racketeering activity, § 1962(c); and to conspire to violate any of the other three prohibitions, § 1962(d). "Racketeering activity" is defined to include a host of state and federal offenses, called "predicate acts," including mail and wire fraud. *See* 18 U.S.C. § 1961(1); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481–82 (1985).

RICO also provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation" of the prohibitions in Section 1962. *Id.* § 1964(c). To proceed on a civil RICO cause of action under Section 1964(c), a plaintiff must plead "(1) an injury in its business or property (2) by reason of (3) the defendants' violation of section 1962." *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011). The civil RICO provision has a limited reach and was "never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings*, 495 F.3d at 472.

It is not clear, from the complaint, what the "predicate acts" giving rise to the RICO claim might be. Plaintiff alleges that misrepresentations were made regarding the video surveillance, but the complaint belies these misrepresentations; and, in any case, it is difficult to see how the alleged misrepresentations relate to the alleged RICO scheme. Specifically, Plaintiff contends that the video footage clearly demonstrates two distinct periods during which he was moving machinery by himself, thereby suggesting that he might have been injured during either of these two events. But this does not contradict what Dr. Goodman reported based on the information that he received from Travelers or Kenosha Beef. Dr. Goodman simply

determined, based on the weights of the items that Plaintiff was lifting, that the injury was unlikely to have resulted from these actions. Additionally, Plaintiff contended that his injury arose at 3:00 a.m., *see* (Docket #1 at 12), but this does not align with the times at which he ostensibly moved the machinery. He does not seem to allege that the video contained omissions of the actual injury, or that there was some other nefarious action at play. In short, Plaintiff has failed to adequately allege that the defendants engaged in fraudulent activity related to his worker's compensation claim—to say nothing of the larger RICO scheme.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge